SC:JPL:CAO
F.# 2010R02175

**CR 13 351** ★

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 12 2013 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

  - against -

FARRUKH BAIG,
BUSHRA BAIG,
MALIK YOUSAF,
ZAHID BAIG,
SHANNAWAZ BAIG,
RAMON NANAS and
TARIQ RANA,

        Defendants.

- - - - - - - - - - - - - - - X

**FEUERSTEIN, J**

I N D I C T M E N T

**WALL, M.J.**

Cr. No. _____
(T. 8, U.S.C., §§
1324(a)(1)(A)(iii),
1324(a)(1)(A)(v)(I),
1324(a)(1)(A)(v)(II),
1324(a)(1)(B)(i),
1324(a)(1)(B)(ii) and
1324(b)(1); T. 18, U.S.C.,
§§ 981(a)(1)(C), 982(a)(6),
1028A(a)(1), 1028A(b),
1028A(c)(5), 1028A(c)(10),
1349, 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

### INTRODUCTION

      At all times relevant to this Indictment, unless otherwise indicated:

### OVERVIEW OF THE SCHEME

      1.  On or about and between January 1, 2000 and June 12, 2013, the defendants, together with others, engaged in a scheme to systematically employ illegal aliens at thirteen 7-Eleven franchise stores in Long Island, New York and eastern Virginia.  In furtherance of this scheme, the defendants knowingly employed more than 50 illegal aliens and used the stolen identities of more than 25 actual people, including their

names and social security numbers, to conceal the presence of the illegal aliens on their payroll. The defendants further exploited the illegal aliens in their employ by misappropriating significant portions of the aliens' wages for their own use, and by requiring the illegal aliens to reside in residences that the defendants owned and controlled.

THE DEFENDANTS

2. The defendant FARRUKH BAIG was a United States citizen who lived in Head of Harbor, New York. FARRUKH BAIG owned, co-owned and/or controlled, together with others, the following thirteen 7-Eleven franchise stores in Long Island, New York and Eastern Virginia: store number 11194 in Selden, New York; store number 11204 in Islip, New York; store number 11212 in Smithtown, New York; store number 34450 in Smithtown, New York; store number 16440 in Cutchogue, New York; store number 20093 in Greenport, New York; store number 23030 in Portsmouth, Virginia; store number 23924 in Port Jefferson Station, New York; store number 27642 in Sag Harbor, New York; store number 33533 in Norfolk, Virginia; store number 33718 in Chesapeake, Virginia; and store number 34298 in Nesconset, New York (collectively, the "Farrukh Baig Stores"). As set forth in further detail below, the Farrukh Baig Stores systematically employed illegal aliens with no legal right to work in the United States.

4.    The defendant BUSHRA BAIG was a United States citizen who lived in Head of Harbor, New York and was married to the defendant FARRUKH BAIG.  BUSHRA BAIG, together with her husband and others, owned, co-owned and/or controlled the Farrukh Baig Stores.

5.    The defendant MALIK YOUSAF was a United States citizen who lived in South Setauket, New York.  Among other roles, YOUSAF helped the defendant FARRUKH BAIG, the defendant BUSHRA BAIG and others to manage and control the Farrukh Baig Stores.  YOUSAF received paychecks from four of the Farrukh Baig stores.

6.    The defendant ZAHID BAIG was a United States citizen who lived in Chesapeake, Virginia.  Among other roles, ZAHID BAIG helped the defendant FARRUKH BAIG, who was his brother, the defendant BUSHRA BAIG and others to manage and control the Farrukh Baig Stores.

7.    The defendant SHANNAWAZ BAIG was a United States citizen who lived in Virginia Beach, Virginia.  Among other roles, SHANNAWAZ BAIG helped the defendant FARRUKH BAIG, who was his brother, the defendant BUSHRA BAIG and others to manage and control the Farrukh Baig Stores.

8.    The defendant RAMON NANAS was a citizen of the Republic of the Philippines who lived in Ronkonkoma, New York. Among other roles, RAMON NANAS helped the defendant FARRUKH BAIG,

-3-

the defendant BUSHRA BAIG and others to manage and control the
Farrukh Baig Stores.

        9.    The defendant TARIQ RANA was a Pakistani citizen
who lived in Chesapeake, Virginia. Among other roles, RANA
helped the defendant FARRUKH BAIG, the defendant BUSHRA BAIG and
others to manage and control the Farrukh Baig Stores.

THE FRANCHISOR

        10.    Seven & I Holdings was the operator, franchisor
and licensor of more than 49,000 convenience stores worldwide.
7-Eleven stores, under the parent company Seven & I Holdings,
were located in 16 countries, with its largest markets being the
United States, Japan, Canada, the Philippines, Hong Kong, Taiwan,
Malaysia and Thailand. 7-Eleven Inc. ("SEI"), the United States
division of Seven & I Holdings Co., was headquartered in Dallas,
Texas. Most of the SEI stores in the United States were operated
by franchisees pursuant to the terms and conditions set forth by
franchise agreements. Through these franchise agreements, SEI
granted franchisees a license to utilize the real property, SEI
trademarks, specialized equipment (such as specialized food and
drink machines) and each physical structure that formed each 7-
Eleven franchise store.

OWNERSHIP OF THE FARRUKH BAIG STORES

        11.  On or about November 11, 1988, defendants FARRUKH
BAIG and BUSHRA BAIG purchased a license to operate 7-Eleven

-4-

store number 16440, located in Cutchogue, New York.  On or about

the date of purchase, defendants FARRUKH BAIG and BUSHRA BAIG

executed a franchise agreement with SEI.

12.  On or about March 14, 1990, defendant FARRUKH BAIG

purchased a license to operate 7-Eleven store number 20093,

located in Greenport, New York.  On or about the date of

purchase, defendant FARRUKH BAIG executed a franchise agreement

with SEI.  Defendant BUSHRA BAIG was later added to the franchise

agreement on or about July 14, 2009.

13.  On or about November 8, 1993, defendants FARRUKH

BAIG and BUSHRA BAIG purchased a license to operate 7-Eleven

store number 11212, located in Smithtown, New York.  On or about

the date of purchase, defendants FARRUKH BAIG and BUSHRA BAIG

executed a franchise agreement with SEI.

14.  On or about November 4, 1994, John Doe #1, an

individual whose identity is known to the Grand Jury, purchased a

license to operate 7-Eleven store number 23030, located in

Portsmouth, Virginia.  John Doe #1 was a straw-purchaser who was

acting on behalf of defendants FARRUKH BAIG and BUSHRA BAIG and

others, who actually financed, controlled and profited from store

number 23030.  On or about the date of purchase, John Doe #1

executed a franchise agreement with SEI and did not disclose the

true ownership and control of store number 23030 by defendants

FARRUKH BAIG and BUSHRA BAIG.

-5-

15.  On or about November 4, 1994, defendant FARRUKH BAIG purchased a license to operate 7-Eleven store number 11194, located in Selden, New York.  On or about the date of purchase, defendant FARRUKH BAIG executed a franchise agreement with SEI.

16.  On or about March 8, 1996, defendants FARRUKH BAIG and BUSHRA BAIG purchased a license to operate 7-Eleven store number 23924, located in Port Jefferson Station, New York.  On or about the date of purchase, defendants FARRUKH BAIG and BUSHRA BAIG executed a franchise agreement with SEI.

17.  On or about November 6, 1999, defendants FARRUKH BAIG and BUSHRA BAIG purchased a license to operate 7-Eleven store number 27642, located in Port Jefferson Station, New York. On or about the date of purchase, defendants FARRUKH BAIG and BUSHRA BAIG executed a franchise agreement with SEI.

18.  On or about September 23, 2000, defendants FARRUKH BAIG and BUSHRA BAIG purchased a license to operate 7-Eleven store number 11204, located in Islip, New York.  On or about the date of purchase, defendants FARRUKH BAIG and BUSHRA BAIG executed a franchise agreement with SEI.

19.  On or about September 4, 2008, John Doe #2, an individual whose identity is known to the Grand Jury, purchased a license to operate 7-Eleven store number 33718, located in Chesapeake, Virginia.  John Doe #2 was a straw-purchaser who was acting on behalf of defendants FARRUKH BAIG and BUSHRA BAIG and

-6-

others, who actually financed, controlled and profited from store number 33718. On or about the date of purchase, John Doe #2 executed a franchise agreement with SEI and did not disclose the true ownership and control of store number 33718 by defendants FARRUKH BAIG and BUSHRA BAIG.

20. On or about January 20, 2009, Jane Doe #1, an individual whose identity is known to the Grand Jury, purchased a license to operate 7-Eleven store number 33533, located in Norfolk, Virginia. Jane Doe #1 was a straw-purchaser who was acting on behalf of defendants FARRUKH BAIG and BUSHRA BAIG and others, who actually financed, controlled and profited from store number 33533. On or about the date of purchase, Jane Doe #1 executed a franchise agreement with SEI and did not disclose the true ownership and control of store number 33533 by defendants FARRUKH BAIG and BUSHRA BAIG.

21. On or about September 25, 2009, defendant FARRUKH BAIG purchased a license to operate 7-Eleven store number 34928, located in Nesconset, New York. On or about the date of purchase, defendant FARRUKH BAIG executed a franchise agreement with SEI.

22. On or about March 14, 2013, defendants FARRUKH BAIG and BUSHRA BAIG purchased a license to operate 7-Eleven store number 34450, located in Smithtown, New York. On or about the date of purchase, defendants FARRUKH BAIG and BUSHRA BAIG executed a franchise agreement with SEI. Defendants FARRUKH BAIG

-7-

and BUSHRA BAIG purchased the license to operate 7-Eleven store number 34450 by exercising a store transfer election to trade-in the license to operate 7-Eleven store number 11212, a process which is described in further detail below.

### THE FRANCHISE AGREEMENTS

23. Pursuant to the terms and conditions set forth by the franchise agreements applicable to the Farrukh Baig Stores, SEI granted to defendants FARRUKH BAIG and BUSHRA BAIG and their straw-purchasers licenses to utilize the real property, SEI trademarks, specialized equipment (such as specialized food and drink machines) and each physical structure. The terms and conditions of the franchise agreements required franchisees to, among other things, comply with all applicable laws, rules, regulations and ordinances.

24. Pursuant to the franchise agreements, SEI also granted other services to franchisees, including an automated payroll service, access to a revolving line of credit, store transfer elections and automatic renewal of franchise agreements.

25. The automated payroll service provided by SEI required franchisees to input each employee's personal means of identification, such as name and social security number, and the hours each employee worked, into each franchise store's data terminal, which was provided by SEI and linked electronically to SEI corporate headquarters in Dallas, Texas. SEI then processed that data and, after subtracting certain expenses, issued wages

-8-

directly to the franchisee's employees. SEI paid franchisee employees in one of the following ways: by check, by direct deposit into a bank account or by deposit to a debit card issued by SEI in the employee's name. Throughout the course of the conspiracy and the execution of the scheme, the Farrukh Baig Stores utilized the automated payroll service provided by SEI.

26. The revolving line of credit provided by SEI enabled franchise stores to pay vendors even when there were insufficient funds in the store bank account. SEI extended the line of credit so that franchisees could pay vendors, and then deducted the credited amounts from future profit disbursements to the franchisees. Throughout the course of the conspiracy and the execution of the scheme, the Farrukh Baig Stores utilized the line of credit provided by SEI on a regular basis.

27. SEI also provided the Farrukh Baig Stores with a store transfer election option and automatic renewal of franchise agreements. Under a store transfer election, if SEI opened a new store in the same geographic area of a franchisee's existing store, the franchisee of the existing store could elect to trade in that store for the brand new location. Defendant FARRUKH BAIG acquired store number 34450 through this store transfer election process. SEI also provided automatic renewal of franchise agreements for franchisees not in breach when the franchisees' 15-year terms ended. Seven of the Farrukh Baig Stores (store

-9-

numbers 11194, 20093, 11212, 16440, 23924, 27642, 23030) renewed their franchise agreements during the course of the conspiracy and the execution of the scheme.

28.  SEI retained ownership of the real property, SEI trademarks, specialized equipment and each physical structure at the franchise stores, including the Farrukh Baig Stores.  The property and services provided by SEI to franchisees under the terms of the franchise agreements, including, but not limited to, the property and services described in paragraphs 23 through 27 above, are referred to herein collectively as the "Franchise Benefits."  Pursuant to the same franchise agreements, SEI also retained the right to reclaim possession and control of the Franchise Benefits if SEI determined that a breach of a franchise agreement had occurred, such as a failure by the franchisee to comply with all applicable laws, rules, regulations and ordinances.

29.    Thus, the franchise agreements for the Farrukh Baig Stores allowed SEI to immediately halt certain Franchise Benefits upon a determination by SEI that a franchise agreement breach had occurred.  For example, SEI had a right to immediately cease the revolving line of credit, the store transfer election and the automatic renewal, among other services, upon a breach of the franchise agreement.  SEI never acted to halt the Franchise Benefits in connection with any of the Farrukh Baig Stores.

30.   The franchise agreements for the Farrukh Baig
Stores also gave SEI the right to terminate the franchise
relationship and reclaim all of the Franchise Benefits if they
determined, <u>inter alia</u>, that the owners and managers of the store
committed a non-curable breach of the franchise agreement.  The
violation of, or failure to comply with, any applicable law,
rule, regulation, ordinance or order relating to the operation of
the store by a franchisee constituted a non-curable breach of the
franchise agreement that gave SEI the right to terminate the
franchise agreement and reclaim the Franchise Benefits.  SEI
never exercised its right to terminate any franchise agreements
in connection with the Farrukh Baig Stores.

<u>THE EMPLOYMENT SCHEMES</u>

31.   The defendants, together with others, knowingly
and systematically employed illegal aliens, who possessed no
legal right to work in the United States, at the Farrukh Baig
Stores.  Among other reasons, the defendants employed illegal
aliens because the defendants knew that they could pay the aliens
less and keep part of the aliens' wages for themselves.

32.   In connection with the operation of the Farrukh
Baig Stores, the defendants, together with others, knowingly
used, without lawful authority, means of identification of at
least 25 persons, whose identities are known to the Grand Jury
(the "stolen identities"), knowing that the means of

-11-

identification belonged to real people.  The defendants, together with others, used the stolen identities to conceal their employment of the illegal aliens at the Farrukh Baig Stores.  In particular, the defendants, together with others, inputted the stolen identity information into the Farrukh Baig Stores' data terminals in lieu of the true identity information of the illegal aliens.  The defendants then submitted that stolen identity information electronically to SEI for processing and wage payment.

33.  The defendants, together with others, then stole significant portions of the wages earned by the illegal aliens by retaining custody of the illegal aliens' SEI-issued checks and debit cards.  Rather than distributing full wages to the illegal aliens, the defendants and others kept significant portions of those wages for themselves and distributed the remainder to the illegal aliens in cash.

34.  The defendants, together with others, knowingly concealed and harbored the illegal aliens at private residences that they owned and controlled near the Farrukh Baig Stores, including: 1000 9th Street #G56, Greenport, New York and other locations (the "Harboring Residences").  The defendants charged the illegal aliens a fee to live at the Harboring Residences, which were neither registered with, nor inspected by, state and municipal agencies, nor approved to operate as rental homes.

-12-

THE WIRE FRAUD SCHEME

35. As set forth in Title 8, Code of Federal
Regulations, Section 274a, the Farrukh Baig Stores were required
by federal law and regulations to inspect identification
documents and keep records to ensure that their employees were
permitted to work in the United States. Under the franchise
agreements, failure to comply with these laws and regulations
enabled SEI to immediately terminate all Franchise Benefits, as
well as the franchise relationship.

36. The defendants FARRUKH BAIG, BUSHRA BAIG and MALIK
YOUSAF, together with others, knowingly and purposefully hired
illegal aliens to work in the Farrukh Baig Stores and did not
inspect the identification documents of the Farrukh Baig Stores'
employees or maintain truthful records. The defendants FARRUKH
BAIG, BUSHRA BAIG and MALIK YOUSAF, together with others,
transmitted false payroll information to SEI about who was
actually working at the Farrukh Baig Stores and how many hours
they were actually working.

37. The false payroll information included the
transfer, use and possession of the stolen identities, in lieu of
the actual identities of the Farrukh Baig Stores' illegal alien
employees. That false payroll information was inputted into the
Farrukh Baig Stores' data terminals and then transmitted to SEI
headquarters, located in Dallas, Texas, for payroll processing.

-13-

In addition, the defendants, together with others, caused the SEI payroll service to transmit this false information, including the stolen identity information, to United States regulatory agencies, such as the Internal Revenue Service.

38.  By transmitting and causing the transmission of the false payroll information, the defendants FARRUKH BAIG, BUSHRA BAIG and MALIK YOUSAF obtained the continued use of SEI Franchise Benefits including, but not limited to, the payroll service, the line of credit and the store transfer election option, and obtained significant portions of the illegal aliens' pay, as described above.

39.  During the course of the conspiracy and the execution of the scheme, the defendants FARRUKH BAIG, BUSHRA BAIG and MALIK YOUSAF generated millions of dollars of profits through the operation of the Farrukh Baig Stores.  Under the terms of the franchise agreements, those profits were shared by the defendants and SEI.

COUNT ONE
(Conspiracy to Commit Wire Fraud)

40.  The allegations contained in paragraphs 1 through 39 are realleged and incorporated herein as if fully set forth in this paragraph.

41.  On or about and between August 1, 2002 and June 12, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants

-14-

FARRUKH BAIG, BUSHRA BAIG and MALIK YOUSAF, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT TWO
(Conspiracy to Conceal and Harbor Illegal
Aliens for Financial Gain)

42.   The allegations contained in paragraphs 1 through 39 are realleged and incorporated herein as if fully set forth in this paragraph.

43.   On or about and between January 1, 2000 and June 12, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FARRUKH BAIG, BUSHRA BAIG, MALIK YOUSAF, ZAHID BAIG, SHANNAWAZ BAIG, RAMON NANAS and TARIQ RANA, together with others, knowing and in reckless disregard of the fact that one or more aliens had come to, entered and remained in the United States in violation of law, did knowingly and intentionally conspire to conceal,

harbor and shield from detection such aliens in one or more places, including buildings and means of transportation, contrary to Title 8, United States Code, Section 1324(a)(1)(A)(iii), which offense was done for the purpose of commercial advantage and private financial gain.

(Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i); Title 18, United States Code, Sections 3551 et seq.)

### COUNT THREE
(Concealment and Harboring of Illegal
Aliens for Financial Gain)

44.  The allegations contained in paragraphs 1 through 39 are realleged and incorporated as if fully set forth in this paragraph.

45.  On or about and between January 1, 2000 and June 12, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FARRUKH BAIG, BUSHRA BAIG, MALIK YOUSAF, ZAHID BAIG, SHANNAWAZ BAIG, RAMON NANAS and TARIQ RANA, together with others, knowing and in reckless disregard of the fact that one or more aliens had come to, entered and remained in the United States in violation of law, did knowingly and intentionally conceal, harbor and shield from detection, and attempt to conceal, harbor and shield from detection, such aliens in one or more places, including

-16-

buildings and means of transportation, which offense was done for the purpose of commercial advantage and private financial gain.

(Title 8, United States Code, Sections 1324(a)(1)(A)(iii), 1324(a)(1)(A)(v)(II), 1324(a)(1)(B)(i) and 1324(a)(1)(B)(ii); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNTS FOUR THROUGH FIFTEEN
### (Aggravated Identity Theft)

46.   The allegations contained in paragraphs 1 through 39 are realleged and incorporated as if fully set forth in this paragraph.

47.   On or about and between January 1, 2000 and June 12, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants FARRUKH BAIG, MALIK YOUSAF, ZAHID BAIG, SHANNAWAZ BAIG and RAMON NANAS, together with others, during and in relation to one or more of the crimes charged in Counts One, Two and Three, did knowingly and intentionally transfer, possess and use, without lawful authority, means of identification of another person, knowing that the means of identification belonged to another person, as identified below:

-17-

| COUNT | DEFENDANTS | VICTIM | STORE ID #'S |
|---|---|---|---|
| FOUR | FARRUKH BAIG, MALIK YOUSAF, RAMON NANAS and TARIQ RANA | John Doe #3, whose identity is known to the Grand Jury | 11212, 23924, 34298 |
| FIVE | FARRUKH BAIG and MALIK YOUSAF | Jane Doe #2, whose identity is known to the Grand Jury | 23924 |
| SIX | FARRUKH BAIG, MALIK YOUSAF and TARIQ RANA | John Doe #4, whose identity is known to the Grand Jury | 11212, 34298 |
| SEVEN | FARRUKH BAIG, MALIK YOUSAF and TARIQ RANA | John Doe #5, whose identity is known to the Grand Jury | 11212, 34298, 11194, 27642 |
| EIGHT | FARRUKH BAIG, MALIK YOUSAF, ZAHID BAIG and TARIQ RANA | John Doe #6, whose identity is known to the Grand Jury | 16440, 33718 |
| NINE | FARRUKH BAIG and MALIK YOUSAF | John Doe #7, whose identity is known to the Grand Jury | 20093 |
| TEN | FARRUKH BAIG, MALIK YOUSAF and ZAHID BAIG | Jane Doe #3, whose identity is known to the Grand Jury | 16440 |
| ELEVEN | FARRUKH BAIG, MALIK YOUSAF and SHANNAWAZ BAIG | John Doe #8, whose identity is known to the Grand Jury | 20093 |
| TWELVE | FARRUKH BAIG, MALIK YOUSAF and ZAHID BAIG | Jane Doe #4, whose identity is known to the Grand Jury | 16440 |
| THIRTEEN | FARRUKH BAIG and MALIK YOUSAF | Jane Doe #5, whose identity is known to the Grand Jury | 20093 |

| FOURTEEN | FARRUKH BAIG, MALIK YOUSAF and ZAHID BAIG | John Doe #9, whose identity is known to the Grand Jury | 16440 |
| FIFTEEN | FARRUKH BAIG and MALIK YOUSAF | John Doe #10, whose identity is known to the Grand Jury | 20093 |

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(5), 1028A(c)(10), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT ONE

48.   The United States hereby gives notice to the defendants charged in Count One that, upon conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting or derived from proceeds traceable to such offense, including but not limited to:

a.   all right, title and interest accorded to the franchisee under that certain Individual Store Franchise Agreement dated June 13, 2008 for 7-Eleven store number 23030 located in Portsmouth, Virginia, and all proceeds traceable thereto;

b.   all right, title and interest accorded to the franchisee under that certain Individual Store Franchise Agreement dated October 13, 2008 for 7-Eleven store number 33718

-19-

located in Chesapeake, Virginia, and all proceeds traceable thereto;

        c.   all right, title and interest accorded to the franchisee under that certain Individual Store Franchise Agreement dated January 8, 2009 for 7-Eleven store number 33533 located in Norfolk, Virginia, and all proceeds traceable thereto;

        d.  all right, title and interest accorded to the franchisee under that certain Individual Store Franchise Agreement dated December 13, 2007 for 7-Eleven store number 33329 located in Chesapeake, Virginia, and all proceeds traceable thereto; and

        e.  the real property and premises located at 5 Farmers Lane, St. James, New York 11780.

      49.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants charged in Count One:

        a.   cannot be located upon the exercise of due diligence;

        b.   has been transferred or sold to, or deposited with, a third party;

        c.   has been placed beyond the jurisdiction of the Court;

        d.   has been substantially diminished in value; or

e.    has been commingled with other property,

which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c), to seek forfeiture of any

other property of such defendants up to the value of the

forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title

18, United States Code, Section 981(a)(1)(C); Title 21, United

States Code, Section 853(p))

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS TWO AND THREE

50.    The United States hereby gives notice to the

defendants that, upon conviction of either of the offenses

charged in Counts Two or Three, the government will seek

forfeiture in accordance with (a) Title 8, United States Code,

Section 1324(b)(1) and Title 28, United States Code, Section

2461(c), which require any person convicted of such offenses to

forfeit any conveyance, including any vessel, vehicle or aircraft

that has been or is being used in the commission of such

offenses, the gross proceeds of such offenses, and property

traceable to such conveyance or proceeds, and/or (b) Title 18,

United States Code, Section 982(a)(6), which requires any person

convicted of such offenses or a conspiracy to commit such

offenses to forfeit any conveyance, including any vessel, vehicle

-21-

or aircraft used in the commission of such offenses, any property, real or personal, that constitutes or is derived from proceeds obtained directly or indirectly from the commission of such offenses, or that is used to facilitate or intended to be used to facilitate the commission of such offenses, including but not limited to:

a.   all right, title and interest accorded to the franchisee pursuant to that certain Store Franchise Agreement dated November 11, 1988 for 7-Eleven store number 16440 located in Cutchogue, New York, and all proceeds traceable thereto;

b.   all right, title and interest accorded to the franchisee pursuant to that certain Store Franchise Agreement dated November 8, 1993 for 7-Eleven store number 34450 located in Smithtown, New York, and all proceeds traceable thereto;

c.   all right, title and interest accorded to the franchisee pursuant to that certain Store Franchise Agreement dated November 4, 1994 for 7-Eleven store number 11194 located in Selden, New York, and all proceeds traceable thereto;

d.   all right, title and interest accorded to the franchisee pursuant to that certain Individual Store Franchise Agreement dated June 30, 2004 for 7-Eleven store number 11204 located in Islip, New York, and all proceeds traceable thereto;

-22-

e.     all right, title and interest accorded to the franchisee pursuant to that certain Individual Store Franchise Agreement dated May 13, 2004 for 7-Eleven store number 27642 located in Sag Harbor, New York, and all proceeds traceable thereto;

f.     all right, title and interest accorded to the franchisee pursuant to that certain Individual Store Franchise Agreement dated May 13, 2004 for 7-Eleven store number 20093 located in Greenport, New York, and all proceeds traceable thereto;

g.     all right, title and interest accorded to the franchisee pursuant to that certain Store Franchise Agreement dated March 8, 1996 for 7-Eleven store number 23924 located in Port Jefferson Station, New York, and all proceeds traceable thereto;

h.     all right, title and interest accorded to the franchisee pursuant to that certain Individual Store Franchise Agreement dated September 25, 2009 for 7-Eleven store number 34298 located in Nesconset, New York, and all proceeds traceable thereto;

i.     all right, title and interest accorded to the franchisee pursuant to that certain Individual Store Franchise Agreement dated June 13, 2008 for 7-Eleven store number 23030

located in Portsmouth, Virginia, and all proceeds traceable thereto;

j.    all right, title and interest accorded to the franchisee pursuant to that certain Individual Store Franchise Agreement dated October 13, 2008 for 7-Eleven store number 33718 located in Chesapeake, Virginia, and all proceeds traceable thereto;

k.    all right, title and interest accorded to the franchisee pursuant to that certain Individual Store Franchise Agreement dated January 8, 2009 for 7-Eleven store number 33533 located in Norfolk, Virginia, and all proceeds traceable thereto;

l.    all right, title and interest accorded to the franchisee under that certain Individual Store Franchise Agreement dated December 13, 2007 for 7-Eleven store number 33329 located in Chesapeake, Virginia, and all proceeds traceable thereto;

m.    the real property and premises located at 1000 9th Street, Unit #G56, Driftwood Cove, Greenport, New York 11944; and

n.    the real property and premises located at 5 Farmers Lane, St. James, New York 11780.

51.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

          a.    cannot be located upon the exercise of due diligence;

          b.    has been transferred or sold to, or deposited with, a third party;

          c.    has been placed beyond the jurisdiction of the Court;

          d.    has been substantially diminished in value; or

          e.    has been commingled with other property, which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property

of such defendants, up to the value of the forfeitable property described in this forfeiture allegation.

(Title 8, United States Code, Section 1324(b)(1); Title 18, United States Code, Section 982(a)(6); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____

FOREPERSON

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

-26-

FORM DBD-34

JUN 85

*No.* _____

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK
## CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

FARRUKH BAIG, et al,

Defendant(s).

# I N D I C T M E N T

T. 8, U.S.C., § 1324 (a) (1)(A)(iii), 1324 (a)(1)(A)(v)(I), 1324 (a)(1)(A)(v)(II), 1324 (a)(1)(B)(i), 1324 (a)(1)(B)(iii),
1324 (b)(1); T. 18, U.S.C., § 981 (a)(1)(C), 982 (a)(6), 1028A (a)(1), 1028A (b), 1028A (c)(5), 1028A © (10), 1349, 2
and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c)

A true bill.

_____
Foreman

Filed in open court this _____ day,

of _____ A.D. 20 _____

_____
Clerk

Bail, $ _____

CHRISTOPHER OTT, ASSISTANT U.S. ATTORNEY
U.S. ATTORNEY'S OFFICE - EDNY
610 FEDERAL PLAZA
CENTRAL ISLIP, NEW YORK 11722
(631) 715-7900