

# LaRusso, Conway & Bartling

April 21, 2015

Honorable Sandra J. Feuerstein
United States District Court Judge
Eastern District of New York
610 Federal Plaza
Central Islip, New York

        Re: United States v. Farrukh Baig
              Criminal Docket No.13-CR-351 (SJF)

Dear Judge Feuerstein:

    Defendant Farrukh Baig ("Farrukh" or "Mr. Baig") respectfully submits this letter in connection with his sentencing, which is currently scheduled for April 27, 2015. For the reasons set forth below, we respectfully submit that a sentence substantially below that of the advisory guidelines is warranted in this case.

    I.   **BACKGROUND**

    As the Court is well aware, Mr. Baig pled guilty to Count One and Count Two of the Indictment in accordance with a plea agreement which stipulated that he conspired to commit wire fraud in violation of §18 U.S.C. 1349, and that he conspired to conceal and harbor illegal aliens for financial gain, in violation of 8 U.S.C §1324(a)(1)(A)(v)(I) and 18 U.S.C. §1324(a)(1)(B)(i). The Pre-Sentence Report ("PSR") assessed Mr. Baig's total adjusted offense level as a 29, which carries an advisory guidelines range of 87-108 months. Based upon the government's proposed filing I believe they agree with

300 Old Country Road          Telephone (516) 248-3520
Suite 341          Facsimile (516) 248-3522
Mineola, New York 11501          www.larussoandconway.com

Probation's calculations, as do we. However, as the PSR sets forth in paragraph 126, the plea agreement stipulated for an additional two level reduction for a global resolution (which did occur) which would bring the total offense level to 27 with a range of 70-87 months. The defendant respectfully submits that a total adjusted offense level of 27 with a corresponding advisory range of 70-87 months should be the Court's starting point in determining a proper and reasonable sentence. Based upon that range, we respectfully ask for a sentence substantially below that based upon the factors to be considered in imposing the sentence pursuant to 18 U.S.C. 3553(a).

Although they have no implication as to the advisory guideline calculations or total adjusted level, we have submitted several factual objections to the PSR. A copy of our letter to the Probation Officer is attached hereto as <u>Exhibit One</u>.

## II **DISCUSSION**

As the court is well aware, <u>United States v. Booker</u> 543 U.S. 220 (2005) restored district courts' ability to fashion a sentence tailored to the individual circumstances of the case by requiring courts to consider all of the factors set forth in Title 18, U.S.C Section 3553(a). Indeed, under Title 18 U.S.C. §3553(a) courts are *required* to sentence below the range if such a sentence would be sufficient to achieve the purpose of punishment. Because the sentencing guidelines are merely advisory in the wake of <u>Booker</u>, the Court may consider all of the factors set forth in 18 U.S.C. § 3553(a) and sentence the defendant to a term of incarceration less than the advisory guidelines.

Following up on their decision in Booker the Supreme Court in <u>Gall v. United States</u>, 552 U.S 38 (2007) and <u>Kimbrough v. United States</u>, 552 U.S. 85 (2007), effectively reaffirmed the district court's broad sentencing discretion by permitting them to impose a sentence after considering "all" the §3553(a) factors, with the Guidelines being only one such consideration. <u>United States v. Jones</u>, 415 F.3d 256 (2d Cir. 2005). Any attempt to give special weight to the Guideline ranges would be contrary to <u>Booker</u> which ruled the Guidelines advisory.

The sentencing guidelines are only the "starting-point and the initial benchmark." <u>Kimbrough v. United States</u>, 552 U.S. 85 (2007) (citing, <u>Gall v. United States</u>, 552 U.S. 38 (2007).

2

Moreover, the Court "may not presume that the Guideline range is reasonable." Gall v. United States, 552 U.S. 38 (2007). Nor should the sentencing court presume a non-guideline sentence "unreasonable." United States v. Jones, 415 F.3d at 256 (2d Cir. 2005); citing, Irizarry v. United States, 553 U.S. 708 (2008).

Rather, the sentencing court must make an individualized assessment based upon the facts presented after full consideration of all the § 3553(a) factors. Gall, 552 U.S. 38 (2007). The Court may, "in the particular case [determine that] a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." Kimbrough v. United States, 552 U.S. 85 (2007) (citing, 18 U.S.C. § 3553(a)) The "greater than necessary" language of § 3553(a) includes the need for a sentence to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense." The Supreme Court recognized that a prison sentence may not promote respect for the law if it appears unduly harsh after consideration of all the factors of a particular case. Gall v. United States, 552 U.S. 38 (2007).

The Second Circuit, in light of these Supreme Court holdings has emphasized that "while a sentencing Court is statutorily obligated to give fair consideration to the guideline before imposing sentence, in the end, it must make an individualized assessment of the sentence warranted by Section 3553(a) based on facts presented." United States v. Jones, 415 F.3d.256, (2nd Cir.2008) (quoting Gall, supra at 597). "Accordingly, non-guideline sentences are not viewed with 'inherent suspicion' nor are they subject to a higher standard of review than abuse of discretion."

Among the factors in 18 U.S.C. § 3553 are (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (B) to afford adequate deterrence to criminal conduct, and (C) to protect the public from further crimes of the defendant. In addition to the factors set forth in 18 U.S.C. Section 3553, 18 U.S.C. § 3661 provides that "no limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court may receive for the purpose of imposing an appropriate sentence."

Based upon the "individualized assessment" of the facts presented herein and after consideration of all the factors detailed in § 3553(a), we respectfully submit that a sentence substantially below that of the advisory guideline range is an appropriate and reasonable sentence for the defendant Farrukh Baig.

Farrukh Baig is a 59 year old male who is the epitome of a hard-working, loving and charitable family man. As will be demonstrated below, his criminal actions, while extremely serious, were an aberration in an otherwise law abiding life. In fact, as the numerous letters will show, Farrukh's reputation was exemplary regarding his love for his family and his community. The letters describe Farrukh as a hard working family man, who had never been in trouble with the law, and now instead of dreaming of retirement and spending time with his children and future grandchildren, now fears a lengthy incarceration and worries how his wife and two children will survive without him.

As will be demonstrated in more detail below, his record of extraordinary contributions to society and pro bono work to charities is worth noting. Prior to this episode Farrukh had no prior record of any kind. The present charges have already had a tremendous negative affect on Farrukh and his family. In addition to the significant family stress of the prosecution, the arrest and potential of serving time has caused great anxiety to the family. Furthermore, the economic devastation to his family has left him financially ruined. His home is now in foreclosure and he will have no way to make whole on the payments. He lost all of the stores he once owned. Besides losing his home in St. James, most of his other properties are either in foreclosure or forfeited to the government. In short, he has become financially ruined. Lastly, his arrest received nationwide publicity which has further served as an additional hardship on Farrukh and his family.

His daughter was scheduled to attend Boston University to study dentistry but due to her fathers arrest they could not afford to send her to Boston and instead she stayed home and now attends Stony Brook University. Additionally, Farrukh's 15 year old son is suffering emotionally with depression and his grades are now declining as a result of his parents' arrest. This family has suffered and will continue to suffer immensely for Farrukh's actions.

Foreclosure of his home, the lost of ownership in his stores and on the verge of bankruptcy, has left Farrukh, at 59 years old, with an enormous challenge to rebuild his future and support his family. The work prospects for a 59 year felon, with no means of further financial support due to the loss of his business, and a wife who cannot support herself, has left Farrukh with a dismal future. As such, he has certainly not escaped punishment for his offense. § 3553(a)(2)(A). As such, we respectfully submit that a lengthy term of incarceration is unnecessary herein.

Farrukh certainly poses "no" risk to the public, and the risk of recidivism is virtually non-existent. A lenient sentence below the recommended guideline range is warranted given that there is no need to protect the public from further criminal conduct of the defendant or to deter future crimes. § 3553(a)(2)(B) and (C). See also, United States v. Carmona-Rodriguez, No. 04 Cr. 667(RWS), 2005 WL 840464, *5 (S.D.N.Y. April 11, 2005)(below guidelines sentence imposed after considering the low probability of recidivism); Simon v. United States, 361 F. Supp. 2d 35, 48 (E.D.N.Y 2005); United States v. Hernandez, No. 03 Cr. 1257 (RWS), 2005 WL 1242344, *5 (S.D.N.Y. May 24, 2005).

Farrukh has by no means escaped punishment for his conduct. He is aware of the gravity of his actions, and has accepted full responsibility for his offense. His letter to the Court, attached hereto as Exhibit Two shows his true remorse. He admits this terrible crime and writes how he has failed as a father to his children and husband to his wife. He admits he lost sight of the things most important to him and should have been more cautious and diligent. He clearly shows remorse and more importantly shows that the chance of recidivism is virtually zero. He begs the Court to be lenient not for himself but for the sake of his family and his wife. His letter shows great concerns for his wife and how she has been left to deal with the burden of no father and no income. His faith has gotten him to this point, but as a religious leader, he has been deeply shamed in his community by the public disclosure of his actions. He has disappointed his family and his friends, and will forever live with the stigma of this conviction. Regardless of his criminal punishment, he is 59 years old with little means of a future to support himself, which has left him and his wife in a state of utter distress at what the future will bring.

Before this incident, Farrukh had no criminal record. He presents no danger to the public, now or in the future. A

5

substantially reduced sentence does not mean Farrukh has or will escape punishment. As the Supreme Court noted in Gall, probation and/or supervised release also amounts to a "substantial restriction of freedom." 128 S.Ct. at 595. As one District Judge observed in a sentencing hearing conducted shortly after the Supreme Court's decision:

> Gall recognized for the very first time in a very long time that probation is not nothing, that there are substantial restrictions on an individual's freedom in probation, that we can structure a probationary sentence that meets all the purposes of sentencing, and that is entirely appropriate. This way one of the things that the guidelines ignored, and the guidelines dramatically changed from preguideline practice and which the Supreme Court is essentially saying we can now look at again.

United States v. Ramos, 04-10275-NG (D.Mass. 2008); See also Gall, 128 S.Ct. at 602 emphasizing that section 3553(a) directs the Judge to consider sentences other than imprisonment.

Therefore, we respectfully submit that application of those factors warrants a sentence substantially below that of the advisory guideline range.

## III. **FACTORS FAVORING A NON-CUSTODIAL SENTENCE**

(A) Personal Characteristics:

Mr. Baig is a 59 year old man who was born and raised in Pakistan by his mother and father. At the young age of 58, Farrukh's father passed away in Pakistan from heart failure. Following his passing, his mother resided in Pakistan and was supported by Farrukh and his seven other siblings. In 1992, Farrukh's mother immigrated to the United States and now lives with Farrukh's sister-in-law in Virginia.[1] Farrukh's mother is now 86 and in moderate health, being monitored for her thyroid condition and other assorted ailments that come with advanced age. Farrukh's mother and siblings are all aware of this instant offense and remain supportive.

---

[1] Prior to the arrest she resided with Farrukh.

6

In 1974, Farrukh left the parental home in Pakistan to attend college for his Master's Degree in Pakistan. After he completed his Masters Degree, Farrukh came to the United States in 1980. He came to the United States on his own, without any job prospects and no family here. As stated above, Farrukh came to the United States with little more than a few dollars and a dream. Despite his education in Pakistan he started at the bottom here in the United States. Upon his arrival he worked at various hotel and/or restaurant jobs as a waiter, bell boy or doing kitchen work. It was there that Farrukh began the dream to own his own business and in 1988 began working for the 7-11 franchise. Shortly thereafter he became a franchise owner and over the next 20 plus years was able to expand to have close to a dozen stores which resulted in the employment of over a hundred individuals. Farrukh has always been a dedicated and hard working individual. Although his age, and the fact that he is now a felon will make it difficult, Farrukh is determined more than ever to be released from jail and work to support his family. Attached hereto as Exhibits Three through Seven are a series of documents attesting to his work history and his value as an employee/employer. Exhibits Three and Four are a letter and certificate from the United States White House praising his hard work and participation in the White House Conference on Small Business in 1995. Exhibit Five is a proclamation from the (then) Suffolk County, County Executive for his humanitarian efforts in 2001. Exhibit Six is an award for outstanding qualities and performance from a well-known hotel he was employed at. Lastly, Exhibit Seven is a certificate acknowledging his hard work for MDA (Muscular Dystrophy Association). These documents, as well as the letters that follow below, show that Farrukh was a hard working, very involved individual who had achieve great success in his family, business and community endeavors.

In 1990 Farrukh became a United States Citizen. Thereafter, he met and married a woman named Maria Baig. Thereafter. That marriage ended because Maria did not want to move to Florida with her so they went their separate ways. In 1994, Farrukh married his current wife Bushra Baig and they had two children, Annam who is 19 years old, and Ali who is 15 years old. Both children enjoy good health and are both enrolled in school. Annam, his daughter is studying to be a dentist. She originally was planning on attending Boston University for dentistry but due to this arrest and financial hardship it has put on the family, she had to abandon her dreams of going to Boston University and now attends Stony Brook University.

Attached hereto is a letter marked as Exhibit Eight from Annam. She is currently enrolled as a sophomore student in Stony Brook University. She is in the Pre-Dental program and is currently majoring in Spanish, with a minor in Biology. She writes in glowing terms about her dad and his struggles coming to the United States and how he has always preached getting ahead by honest work and dedication. She informs the Court that it was her dad who provided her with the foundation to work hard in school. As such, she graduated high school with a perfect GPA score of 4.0 and hopes to become a dentist. She is currently on the deans list at school. She writes about her dad's arrest and the impact it has had on her and the family. She and the family have survived due to the overwhelming generosity of the community who has expressed unconditional empathy towards her father and the family. She describes the emotional toll his absence has taken on her and her inability to be able to address her problems with him. Most importantly she talks about the visits for the past 20 months and the changes she sees in her father. He has become even more self-criticizing and sees how remorseful he feels. She wants nothing more than the opportunity for her father to reunite with his family and begin the long road back to respectability. She begs the Court to be as lenient as possible when sentencing her father.

   Although Farrukh's daughter Annam is adjusting to the current hardship in the family, their son, who is in 10th grade is not doing as well. He suffers from depression and his grades are now declining as a result. Attached hereto as Exhibit Nine, is a letter from Ali. Although only 15 years of age, the letter shows an understanding and maturity level well beyond his age. Ali writes that his father is foremost the greatest person he knows and the most important person in the world to him. He cannot stop recalling the morning of the arrest and constantly goes to bed every night hoping nothing dreadful happens. He describes life before that day with his dad as great and describes the various activities they did together. However, he relates that since the arrest he has been clinically depressed, losing interest in all things, and life no longer having any purpose. He tries to put up a brave front so as to not worry his parents but describes being shattered on the inside. He relates that the community has rallied and has helped immensely and doesn't know where they would be without them. As his sister described, his dad has instilled in him a dedication and work ethic to achieve a professional career. He visits his dad every Friday and sacrifices many internal conflicts and emotions so as to not worry his dad. It's ironic that their roles have changed to some degree with the jail visits serving to lift his dad's

8

spirit and to keep him going strong. The emotional rollercoaster has led him to be unable to sleep in his own room. Often sleeping in his mother's room so as to make sure she will not leave. He finishes by wishing he can switch places with his dad and implores the Court to understand that his dad is remorseful and understanding of his criminal actions. He begs the Court for an opportunity to have his dad come home and reunite with him and his family.

The biggest fear Annam and Ali wrestle with is if both of their parents are incarcerated they will have no one to help in their care. Albeit they are not toddlers, they still need parents to attend to their needs. The four months their parents were incarcerated together has had a devastating effect on the children. In this case, several of their immediate family members were also arrested and will have to tend to their own familial needs so there will be little help for the children if both are incarcerated. Exhibits Ten and Eleven are letters from Shahida Rehmani, who is a child and adolescent psychiatrist and the older sister of Farrukh's wife. She and her husband write to inform the Court that after the arrest of Bushra and Farrukh they took the children in. They describe the effects this traumatic event had on the children. Specifically, they inform about the need to get counseling for Ali and how much that Ali, as well as Annam need their dad at home at this time in their lives.

Attached hereto, as Exhibits Twelve through Twenty are nine additional letters from family members. All of the letters, many from his wife's family, expel the virtues of Farrukh as a kind hearted charitable man who completely loves his family. Three of the letters stand out. Exhibit Twelve is a letter from Muhammad M. Baig. Muhammad is Farrukh's nephew. He writes in glowing terms how Farrukh has been not only an uncle but a father figure and a mentor to him. He describes how Farrukh was always there for him, attending his high school soccer games and buying him needed cleats. He also describes how Farrukh always preached being successful in the classroom and becoming a professional. Specifically, he tells the story of him being 16 and him and his best friend wanting to start a landscaping business. Farrukh gave them the money to buy a lawn mower and a weed-whacker machine so they could start the business which became successful. After a few yeas his partner was diagnosed with cancer. Farrukh made it a priority to visit the hospital once a week and make sure he was receiving proper care. Unfortunately, his friend succumbed to the disease while Farrukh was away on a trip. Upon hearing the news he rushed back to be at my side for

9

the funeral. He helped the family financially to make sure that the family had a proper funeral. Muhammad ends by saying that Farrukh is a very caring and giving man and hopes the Court can consider giving him a second chance.

Exhibit Thirteen is a letter from Mumtaz Khan who is Farrukh's paternal aunt and a teacher for the past 27 years. She writes about Farrukh in glowing terms remembering him growing up and leaving the family to come to the United States. She describes him as extremely generous and relates and incident from years ago. Farrukh, while a student, meet a family of five who became orphans. While Farrukh did not have any money he rallied his family, including me, to raise funds to help the five orphaned children. He kept guiding the children to stay on track and work hard to stand on their own. Today all five of the children are self-sufficient. She describes Farrukh as pro education especially for woman. Every single member of the family has either under-graduate or post-graduate degrees and Farrukh is happy to help financially for those who need money for education. He is a great husband, father and son to his elderly mother. She begs the Court for the sake of their family to give Farrukh a second chance.

Exhibit Fourteen is from Abdul Waheed Chowdhry who is Farrukh's father-in-law. We see on many occasions in-laws react angrily in cases such as this. However, here Mr. Chowdhry speaks extremely highly of Farrukh. He has known him for over 20 years and respectfully believes that Farrukh has learned his lesson and has served enough time. He describes the devastating effect it has had on his daughter and children as well as him and his wife. He begs the Court for a second chance.

Exhibits Fifteen – Twenty all extol Farrukh's family virtues and all he has done for them personally, the family in general and his special relationship with his wife and children. All ask the Court for leniency.

(B) Seven-Eleven Employment/Community Involvement

For over 20 years Farrukh has been involved in the 7-11 franchise store business. Over that time he has been a franchisee of numerous stores and has employed hundreds of people. He was always looked upon as a model franchisee and an excellent person to deal with. Exhibit Twenty-One is a letter from Jack Rugen and other board members of the United Franchisees Owners of Long Island ("UFOLI") which is an

10

organization dedicated to the protection, development, advancement and improvement of the franchise community in Long Island. Mr. Rugen writes that Farrukh has been a dedicated member for the past 25 years and has served in various leadership posts including director and vice-president. He describes Farrukh as an exemplary leader and often takes his personal time to help new members. He describes how he represented Long Island serving as a representative in 1995 on the White House Small Business Conference under then President William Clinton. Lastly, he marvels at the amount of time and effort Farrukh has put into being an active member of the community especially his work for MDA (Muscular Dystrophy Association) and Toys For Tots. He concludes that whatever the outcome they wanted the Court to know that Farrukh is an upstanding member of this association and has indisputably brought guidance and support for individual members of the franchise community.

Exhibit Twenty-Two is a letter from Robert D. Bartolomeo who is the National Franchise Sales Manager for Red Mango. He has known Farrukh since 1985 when he himself was employed by 7-11 Inc. from 1985 to 1995. He describes Farrukh as dedicated, detailed, hard-working, honest and operated first rate stores. He writes that Farrukh was an avid fundraiser for MDA and was an ambassador and liaison between other franchisee's and 7-11. He was invited by 7-11 to sit on many committees to help better the 7-11 franchise. He did socialize with Farrukh and the family and describes him as good family man and a generous man always looking to help others.

Exhibit Twenty-Three is a letter written by Martin Kelly who owns Eddy's Ice Cream which serves as one of the main supplier's of 7-11 stores. Mr. Kelly has known Farrukh for over 15 years and describes him as honest, honorable, professional and an individual who gives back to the community with his support of several charities. He knows Farrukh to be a good family man and husband and remembers fondly his being at Farrukhs daughter sweet 16 and seeing the love he had for his daughter and extended family. He respectfully request when deciding sentence to take his letter into account.

Lastly, Exhibit Twenty-Four is a letter from Joe Galea the chairman of the National Coalition of Associations of 7-11 Franchisees ("NCASEF"). He writes, asking for leniency, about Farrukhs representation of his regional Franchise Owner's Association ("FOA") and that of the NCASEF. He describes

11

Farrukhs work as professional and has always been generous to numerous community causes we support.

Exhibits Twenty-Five through Twenty-Eight are a few letters that serve to show how Farrukh has helped other 7-11 franchisee owners start and better their business. Specifically, Exhibit Twenty-Five is a letter from Kashif Ghazanfar who has been a franchisee owner in Virginia for the past seven years. He has known Farrukh since 1997 when he was hired by Farrukh for the Smithtown, New York and Sag Harbor stores. He tells in general terms how he was instructed to engage the community and make sure to support the local community such as the fire and police departments and the local youth sport teams. Specifically, he recalls an incident in 1999, when an employee at the Smithtown location had some medical issues with his back. Despite being busy with his brothers wedding, Farrukh took the time to take this employee to the doctor and pay for his medical expenses. He always treated his employees with respect and gratitude and on many of the holidays, both religious and non-religious, made sure that they had good meals for them and their families. Lastly he relates a story of a robbery at his store and because of his negligence there was several days of deposits in the draw that should have been deposited. However, Farrukh forgave him and gave him another chance to redeem himself which is what he know asks of the Court for Farrukh.

In Exhibit Twenty-Five (above) Mr. Ghazanfar describes an incident relative to an employee's health. Exhibit Twenty-Six is from that employee. Mr. Muhammad Irfan writes about his back problems in 2000. He writes how Farrukh got him insurance, made all his doctor appointments and when he had his surgery he paid his salary even though he was out of work for quite awhile. As does the others, he writes of a generous employee who was engaged with the community supporting the chamber of commerce, fire department and other local organizations.

Exhibit Twenty-Seven is from Saquib Hameed who is a college graduate and now serves as a technician for a pool and spa company. He was employed by Farrukh for five years and found Farrukh to be one of the most compassionate, considerate and very hard working employers. He too describes the support of local charities. Most importantly, he describes another employee who became very sick and with liver failure and in need of a liver transplant. Farrukh consulted with a friend who was a physician and got him to Mount Sinai Hospital. Farrukh paid for him to get insurance and he ultimately received a liver transplant.

Lastly, in Exhibit Twenty-Eight, Sheikh Ahmed writes that he was employed by Farrukh for two years but has known him for almost 45 years. They grew up together and attended college together. He describes Farrukh as a hard working, dependable and community minded citizen. He relates two specific instances where Farrukh helped him. First, in the 1990's, Farrukh employed him for two years. He found him to be very considerate of the employees and confirms he took employees to doctors and hospitals when needed. Secondly, in 2008 when my pizza business failed it was Farrukh who helped him recover mentally and worked with him to find him another business. He was able to get back on his feet and is grateful for the support at a time he was most vulnerable.

(C) Religious Community Involvement

Since his arrival in the eastern section of Long Island Farrukh has been a very integral part of the community in many ways. Farrukh is a deeply religious man and a leader in his religious community. The Islamic Association of Long Island is one of the oldest non-profit charitable Islamic organizations in Long Island. For the past twenty years Farrukh has be an integral part of that organization. Serving as President and as a Board of Trustees member, Farrukh has been involved in all aspects of the organization especially the educational center. Exhibits Twenty-Nine and Thirty-One to Thirty-Three, are four letters from prominent members of the organization that have interacted with Farrukh over the last twenty years. Exhibit Twenty-Nine is from Tahir Qureshi has served on the board from 2009 to present and writes that the main reason he joined was Farrukh. He describes Farrukh as a leader and a visionary who provided leadership and directed many of the organizations current programs. Two major projects Farrukh was involved with were fund raising to help local charitable organizations such as the local soccer and little league as well as the United Nations Children Fund and the Haiti Earthquake relief fund. Farrukh was very involved in the new building project, both in the approval process as well as the construction. Attached hereto as Exhibit Thirty, are two photos showing the center pre and post construction. Mr. Qureshi's letter, as well as the other letters from three other past presidents of the association, describes Farrukh as a good, trustworthy, and dignified man who made a terrible mistake that was and is out of character for the man they know; a family man always eager to help others less

fortunate weather young or old. All of the members support him and respectfully request he be spared a lengthy prison sentence.

Regarding Farrukh's other charitable participation Exhibit Thirty-Four is a letter from Moviz A. Siddiqi who is the director of Inca Relief USA. Inca is a faith based organization addressing the needs of the community. They have 13 shelter homes for woman across the United States, as well as 15 food panties and soup kitchens. Mr. Siddiqi informs that Farrukh is a volunteer and supporter of the woman's shelter home in Queens, New York volunteering his time and money to assist the shelter. Also attached hereto are Exhibits Thirty-Five and Thirty-Six which are letters from two additional non-profit organizations (AL-Madni Masjid, Inc. and Masiid Darul) which both praise Farrukh for his dedication to the community and its well being.

(D) Letters from Friends and Community

While it is not uncommon to have family and friends write to the Court on behalf of the accused, here the amount of outpouring of support from friends and people in the community has been simply amazing. Here, not only do we have an overwhelming amount of letters,[2] we have an overwhelming amount of letters that all speak extremely highly of Farrukh. Exhibits Thirty-Seven to One Hundred are a serious of letters that, despite the serious nature of his crimes, shows his friends and community nonetheless stand by him. That in and of itself speaks volumes about the type of person Farrukh is. Each and every letter speaks about three major things. Farrukh the family man, Farrukh the community supporter and lastly, each adding their own touch as to their relationship with Farrukh and the impact he has had on them and their family. The letters are from CEO's, doctors, lawyers, pharmacists, accountants, local business people, as well as neighbors and parents of children who are friends with Farrukhs children. While it is impossible to talk about each and every letter I would be amidst if I didn't high-light a few of them.

Exhibit Thirty-Seven is a letter from Navid Ghani who is a professor at Five Towns College in Long Island. Dr. Ghani has known Farrukh for over fifteen years and attests to his activity in religious and communal affairs. Whether it be serving on the Mosque' executive Board, fundraising within the mosque and the

---

[2] We do not wish to burden the Court but felt compelled for the Court to see the widespread support Farrukh has received.

14

community or mentoring local youths, Dr, Ghani praises him as a dedicated servant and community leader. Specifically, Dr. Ghani writes about Farrukhs help to a local family stricken by misfortune. Farrukh helped them economically and passionately to alleviate their sufferings. Personally, he recalls when his own brother-in-law lost his job and was on the brink of financial disaster, it was Farrukh who gave him a job at one of his franchises to help him out. Furthermore, he is impressed by Farrukhs dedication to helping woman in society by promoting and contributing to the National Battered Woman's foundation. He concludes by stating that the loss of his credentials, his loss of accreditation for his vocation, the loss of respect in the community and his family's suffering serves a bigger deterrent than any further incarceration. He asks the Court to take all of Farrukh's good works into consideration and prays for mercy.

Exhibit Thirty-Eight is a letter from Bashir Ahmed, M.D. who is a clinical assistant professor and a family medicine physician. He has known Farrukh and his family for the last seven years. His letter touches on Farrukh's help to those less fortunate. Specifically, he recalls a family who came here from Pakistan with two kids and was unable to work for several months. It was Farrukh who offered both parents a job, helped them find affordable housing and got them established here in the United States. Additionally, he relates his involvement in the community and the building of a new mosque and funeral home. He was one of the leaders in donating as well as fundraising to get the new mosque built. However, due to his incarceration they have been unable to complete the funeral home. Lastly, he recalls Farrukhs willingness to help his employees with medical issues and the financial issues that arose from that. As do the others he prays for leniency.

Exhibit Thirty-Nine is a letter from Hardeep Sawhney, who along with his wife runs an IT school in Nassau County. He has known Farrukh and his family since the early 1990's. He likens Farrukh to an elder brother and mentor and one of the most generous men he has ever come across. Despite the fact that they are from two different countries and religions there has never been an instance of Farrukh portraying him different from them. Specifically, he recalls February 2008, when he fell ill requiring two separate surgeries to his brain. It was Farrukh who visited him everyday in the hospital and keep his, as well as his family's spirits up. He was like a rock and his love, loyalty and dedication to his friends are beyond words.

Exhibit Forty is from Arain Nawaz, M.D. who is a board certified Gastroenterologist and board certified member of Stony Brook Hospital. He describes Farrukh as a friend and recalls a time one of his employees became seriously ill necessitating a liver transplant. The employee lacked resources and Farrukh spent his own funds to make sure the man received a liver transplant. He routinely saw Farrukh invite employees to his home and treat many of them as family. He recalls an event in which Farrukh was instrumental in arranging a wedding reception at his home so an employee could get married. He has witnessed him as a husband and father and sees the dedication to his wife and children. Lastly, he describes Farrukh the community man who has come to the rescue of many people in need in the local community. He gives financial contributions, but more importantly, donates his time to help the youth of the community. He begs the Court for forgiveness and leniency.

Exhibit Forty-One is from Shahid Ali Khan who has been a friend of Farrukhs for over 15 years. He writes about Farrukhs help to the families in their community who could not afford a proper burial for their loved ones. Farrukh often raised funds to buy burial plots and help numerous families pay for burial expenses. He also talks about his help and involvement in the annual Thanksgiving food drive. Lastly he talks about his dedication to his wife and children and how their lives have been impacted and how they need him home. He hopes the Court offers him a second chance.

Exhibit Forty-Two is a letter from Ahmed Wian who recalls moving to the United States in 2001. He attributes his success today (married with a daughter and working in the IT industry) to Farrukhs help. Farrukh helped him come here. Once here, he provided an affidavit in support of admission to schools. He supported me like a father through his studies and was always there for needed advice. He recalls accompanying Farrukh to a wedding in 2002. He learned that it was one of Farrukhs employees and that Farrukh was instrumental in arranging the wedding for him. He states he lives the American dream today because of the efforts made by Farrukh.

Lastly, Exhibit Forty-Three is a letter from Irfan Khawaja who has known Farrukh for almost twenty-five years. He refers to Farrukh as a great person who supports many charitable organizations and has motivated him to take part in community activities. He specifically discusses Farrukhs involvement in Independent Group Home Living Program (IGHLP) which helps families with residential and rehabilitation support services

16

and an opportunity center for families supported by the organization.

Attached hereto is Exhibit Forty-Three A from Attorney Mitchell Zwaik who represented Farrukh's business interests. This letter further serves to illustrate how Farrukh treated his employees.

There are so many other letters (Exhibits 44-100) that talk about the things Farrukh has done for others, such as sitting in hospitals, paying expenses for others and making his community better for the youth. While we can't list each and everyone we hope the Court has the opportunity to see that the letters do show, that despite his grave mistakes herein, he is a generous and decent individual that cares deeply for his family and community and that his family, friends and community are better served with him in the community than incarcerated.

(E) Health and Medical Concerns Warranting a Departure

In fear of his health since his father died at the age of 58, Farrukh has always maintained up to date physicals and medical appointments. Farrukh suffers from type 2 diabetes, hypertension and coronary artery disease which is regulated by medication. Similar to his father, Farrukh has a heart condition and is concerned that a lengthy prison sentence could result in a deterioration of his health. In 1999, he underwent heart surgery at Stony brook hospital to install two cardiac shunts to correct and fix blood flow to his heart. Attached as Exhibits One Hundred One and One Hundred Two, are letters from his treating physicians, which give some details of his physical ailments.

(F) Attempted to Assist the Government

Twenty days after his arrest, Mr. Baig voluntarily came in and met with the agents and the United States Attorney's Office and was cooperative and remorseful. He proffered and was able to give the Government information pertaining to other 7-11 franchises and the 7-11 Corporation. Although the information provided did not rise to the level of substantial assistance, and there is no expectation of a 5K1.1 letter, he timely accepted responsibility, spared the government and the Court of a lengthy trial, and agreed to pay restitution and forfeiture. Mr. Baig met

17

with the United States Attorney's Office and its agents on six separate proffer meetings. He was found to be truthful and reliable but unfortunately his information, while helpful, did not rise to the level of substantial assistance warranting a 5K1.1 letter. However, his willingness to plead guilty and working with others to do the same did assist the government in "breaking the log jam" in that all of the remaining defendants, including his wife and brothers entered guilty pleas. Based upon those efforts the government saw fit to include in the plea agreement a further reduction in the guidelines for the global disposition.

(G) <u>Post Arrest Involvement</u>

Since his arrest on June 17, 2013, Farruhk has been incarcerated in the Queens Private Correctional Facility. Since it is a pre-trial facility there very few programs available for inmates to take. For example, the Residential Drug and Alcohol Program (commonly known as RDAP) is a program that Farrukh could benefit from. Counseling for his alcohol issues would be beneficial and could have resulted in him receiving credit on any sentence. However, Farrukh has made efforts to better himself while incarcerated. Attached hereto as <u>Exhibits One Hundred Three</u> to <u>One Hundred Seven</u> are the following certificates: September 9, 2013 for completion of the anger management course; October 21, 2013 completion of the relapse prevention course; December 9, 2013 a 12 week relapse prevention course; July 18, 2014 a 18 week completion of the relapse prevention course and lastly on February 16, 2015 a completion of the 36 week relapse prevention course. As he states in his letter he fully accepts responsibility for his actions, understands the severity of them and fully knows that the 22 months of incarceration away from his family has been a punishment of the greatest magnitude.

## CONCLUSION

Mr. Baig is truly remorseful for his criminal conduct. He asks the Court to consider this conduct as an aberration in an otherwise law-abiding and family-centered life. The enclosed letters demonstrate that Mr. Baig is a person of good character and that his actions herein are the only example of criminal conduct in an otherwise law-abiding life. Given Mr. Baig's lack of criminal history, lack of potential towards recidivism, his charitable contributions, and the substantial economic

punishment he suffers from now and faces in the future, we respectfully submit that a sentence substantially below that of the advisory guidelines range is warranted.

                                                Respectfully Submitted,

                                                Joseph R. Conway, Esq.

CC: AUSA Christopher Ott
    United States Probation
    Co-defendant Counsel